U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED-SHREVEPORT

AUG 30 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

---

LAURA BRADFORD

versus                               CIVIL ACTION NO. 05-1504
                                        JUDGE TOM STAGG

INSURANCE MANAGEMENT
ADMINISTRATORS OF
LOUISIANA, INC.

---

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by the defendant, Insurance Management Administrators of Louisiana, Inc. ("IMA"). See Record Document 11. For the reasons set forth below, IMA's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

Laura Bradford ("Bradford") began working for IMA on July 8, 2004 in the position of Database Assistant. Bradford claims that during the first few weeks of her employment she began to notice that Butler Gates ("Butler"), a co-worker who she

believed had supervisory authority, was creating a hostile work environment with his sexual harassment. She claims that Butler made rude and sexual comments about her physical appearance, including a comment that she had a "baby-looking figure." She also asserts that he tried to set her up on dates with male customers, continually made dirty comments, and constantly commented on women's physical appearances, including a comment referring to another female employee's chest as the "Himalayas." Bradford claims that Butler also humiliated her by referring to a photograph she chose for a marketing brochure as "look[ing] like a couple of lesbians," and then "chastising" her in front of her co-workers for choosing the picture.

After this incident, which occurred on November 4, 2004, Bradford became very upset and began crying in the workplace, at which point she called her husband who came to the office to comfort her. On November 8, 2004, Butler told Lori Gates ("Lori"), their supervisor, about the incident because he was concerned that Bradford was upset. Lori then asked Bradford about the incident, at which point Bradford complained to Lori about Butler's behavior and told Lori that she believed his conduct was sexual harassment. Bradford also made a written statement reflecting her complaint. In response to these complaints, Lori moved Bradford out of the cubicle area where she

2

was working and into an office Lori and Bradford would share. Bradford concedes that after her complaint on November 8, 2004, she was never again exposed to Butler's inappropriate behavior.

However, Bradford claims that after she made the complaint, her supervisors at IMA began to retaliate against her. She alleges that she was no longer invited to the meetings she was formerly invited to, that additional and more difficult job duties were assigned to her, and that the supervisors became more critical of her work. Bradford further asserts that she received less guidance from her supervisors and that they began to ostracize her. She argues that no complaints were made about her job performance until after November 8, 2004, when she made the sexual harassment complaint. Bradford also states that she was terminated within four months of making the complaint because of an error that was blamed entirely on her, but that was actually caused by Lori.

IMA argues that Bradford was fired solely on the basis of her poor job performance, including an error she made that would take several weeks to correct. The company asserts that both before and after her sexual harassment complaint, she was invited only to the meetings that were relevant to her job. IMA also contends that

3

problems existed with Bradford's job performance both before and after her complaint.

Bradford filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a "Notice Of Right To Sue," and Bradford timely filed the present suit after receiving the notice.

## II. LAW & ANALYSIS

A. **Summary Judgment Standard.**

"Summary judgment is not favored in claims of employment discrimination." Waggoner v. City of Garland, 987 F.2d 1160, 1164 (5th Cir. 1993). However, summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002).

If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004) (citations and quotations omitted). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co. Inc., 402 F.3d 536, 540 (5th Cir. 2005). "[T]he nonmovant cannot satisfy [his] burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Freeman v. Tex. Dep't of Criminal Justice, 369 F.3d 854, 860 (5th Cir. 2004). However, when ruling on a motion for summary judgment, "doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Bishop, 238 F.3d 586, 589 (5th Cir. 2000).

**B.  Bradford's Claims.**

**1.  Sexual Harassment.**

Bradford asserts that Butler's actions created a hostile work environment. Title 42, United States Code, section 2000e-2(a)(1) states:

5

> [i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

The Supreme Court has held that harassment is actionable under this statute "only if it is so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." Clark County School Dist. v. Breeden, 532 U.S. 268, 270, 121 S.Ct. 1508, 1509-1510 (2001) (internal marks omitted).

To establish a hostile work environment claim, Bradford must prove five elements: (1) she belonged to a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment was severe or pervasive enough to alter a "term, condition, or privilege" of her employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. See Woods v. Delta Beverage Group, Inc., 274 F.3d 295, 298-299 (5th Cir. 2001).

IMA concedes, for the purposes of this motion only, that the first two elements of a hostile work environment claim are met. However, IMA argues that Bradford has failed to meet the remaining elements, and that summary judgment should therefore be

6

granted.

While it appears that at least some of Butler's statements were based on Bradford's sex in satisfaction of the third requirement, it is questionable whether the alleged harassment reached the level of severe or pervasive as required to satisfy the fourth element. A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." Frank v. Xerox Corp., 347 F.3d 130, 138 (5th Cir. 2003). In determining whether an environment is hostile, several factors are relevant in the inquiry: (1) the frequency of the discriminatory conduct; (2) the severity; (3) whether the conduct is physically threatening, or a mere offensive utterance; (4) whether the conduct unreasonably interferes with an employee's work performance; and (5) the conduct's effect on the employee's psychological well-being. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993). The question of whether Butler's harassment was severe or pervasive must be evaluated by looking at the totality of the circumstances. See Woods, 274 F.3d at 299.

Bradford provides a list of specific instances of Butler's offensive conduct. See Record Document 22 at 8. However, her assertions that Butler "always" made rude

7

comments and "always" commented on women's physical appearances will be given little weight, as without specific instances of conduct the court cannot evaluate whether Bradford's subjective perception that the comments were severe or pervasive was objectively reasonable. See id. Considering that the eight comments that were specified were made over approximately eight months of employment, it does not appear that they were frequent enough to be considered pervasive.

In addition, while some of the comments were likely offensive, none of the incidents was particularly severe or was physically threatening. Further, an occasional unwelcome comment like those alleged here should not unreasonably interfere with a reasonable person's work performance or particularly affect the person's psychological well-being. After evaluating the list of alleged incidents, the time period over which they occurred, and the lack of severity, the court finds that it is doubtful that Butler's conduct meets the requirement of being severe or pervasive. However, it is unnecessary for the court to make a determination on the issue, as the fifth requirement for establishing a hostile work environment claim is not met.

Bradford has not established that IMA knew or should have known of the harassment and failed to take prompt remedial action. Bradford admits that the

harassment immediately ceased when she reported it to her supervisors. An employer "cannot be held liable for conduct of which it had no knowledge," therefore, IMA cannot be held responsible for the incidents that occurred prior to Bradford's first complaint. See Woods, 274 F.3d at 299. Bradford admits that after she made the complaint her workspace was immediately moved away from Butler's and she was never again exposed to his remarks. Because the final element of a hostile work environment claim is not met, Bradford's sexual harassment claim fails.

Bradford argues that she believed Butler was her supervisor and, therefore, the last element of the analysis is not required. See Woods, 274 F.3d at 299, n.2 (stating that where an employee asserts a sexual harassment claim alleging harassment by a supervisor, the employee need only satisfy the first four elements of the aforementioned test). However, she presents no authority to support her assertion that her belief alone was enough for him to be considered a supervisor under a sexual harassment analysis. The defendant cites Feliciano v. Alpha Sector, Inc., No. 00-9309, 2002 WL 1492139, at *10 (S.D.N.Y. July 12, 2002), where the court held that the harasser must have the relevant supervisory powers implicit in the Title VII definition of a supervisor in order to be considered a supervisor in the analysis. The court stated that under a Title VII

9

analysis, the alleged supervisor must necessarily have certain "trappings of authority," like the ability to hire and fire or to set schedules. See id. It is this ability to affect the conditions of employment that warrants a different analysis when the harassment is committed by a supervisor, the court found. See id.

This court agrees with the reasoning in Feliciano, and finds that Bradford must show that Butler had authority over her in order for him to be considered her supervisor for Title VII purposes. Bradford says she believed he was her supervisor but does not identify any specific authority she believed he held. Her deposition testimony shows that Lori and Lori's supervisor Nicola Sumpter ("Sumpter") hired her and performed her work evaluations. She does not cite any instance where Butler asserted authority over her, or anything else that would have caused her to reasonably believe he had such authority. Accordingly, the court finds that Butler was not Bradford's supervisor for Title VII purposes, and a modified analysis is therefore not warranted.

In addition, Bradford's claim that IMA failed to prevent such behavior is also without merit. IMA had a sexual harassment policy in place that was provided to Bradford when she began working at IMA. The policy was enforced and was effective, as evidenced by the fact that as soon as Bradford's supervisors became aware that she

felt she was being harassed, they took the steps necessary to end such harassment.

Accordingly, IMA's motion for summary judgement is **GRANTED** as to Bradford's hostile work environment sexual harassment claim.[1]

### 2.   Retaliation.

Bradford next claims that after she made the sexual harassment complaint, the conditions of her work changed, and she was eventually fired, all in retaliation for her complaint. A retaliation claim is governed by 42 U.S.C. § 2000e-3(a), which states:

> It shall be an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under the subchapter.

To state a claim for retaliation under the statute, Bradford must establish: "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the

---

[1] IMA offers Dr. Paul Ware's ("Dr. Ware") expert opinion in support of its assertion that Bradford's subjective perception of the alleged sexual harassment was not objectively reasonable. Bradford filed a motion to strike and exclude Dr. Ware's opinion from consideration on summary judgment. See Record Document 23. The court did not consider Dr. Ware's opinion in granting the motion for summary judgment on the sexual harassment claim, therefore, Bradford's motion to strike (Record Document 23) is **MOOT**.

adverse employment action." Evans v. City of Houston, 246 F.3d 344, 352 (5th Cir. 2001) (citations omitted).

Bradford may prove her retaliation claim through direct or circumstantial evidence. See Fabela v. Socorra Indep. Sch. Dist., 329 F.3d 409, 414 (5th Cir. 2003). However, if she does not have any direct evidence of retaliation, she must establish her cause of action using circumstantial evidence and the McDonnell Douglas burden-shifting framework. See id. at 415 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973)).

Under the McDonnell Douglas burden-shifting framework, if Bradford establishes a prima facie case, IMA must show a non-retaliatory reason for the adverse action. If IMA meets this burden, Bradford must in turn offer evidence that IMA's reason is not true, but is instead a pretext for discrimination. "The ultimate determination is whether, 'but for' the protected conduct, the employer would not have engaged in the adverse employment action." Douglas v. DynMcDermott Petroleum Operations Co., 144 F.3d 364, 372 (5th Cir. 1998) (citations omitted); see also Septimus v. Univ. of Houston, 399 F.3d 601, 608 (5th Cir. 2005) ("This court has consistently required a 'but for' standard for proving causation on a Title VII retaliation claim

12

brought under the pretext framework.").

It is undisputed that Bradford engaged in a protected activity. She made a written complaint to IMA about Butler's allegedly harassing behavior after the November 4, 2004 incident involving the marketing brochure. It is also undisputed that an adverse employment action occurred, as Bradford was fired from her position at IMA approximately four months after she made the sexual harassment complaint.

Furthermore, Bradford not only asserts that she was fired, but also that she was ostracized and provided with less training after making her harassment complaint, and that her work performance came under closer scrutiny. The retaliation provision prohibits employer actions that "would have been materially adverse to a reasonable employee or job applicant." Burlington N. & Santa Fe Ry. Co. v. White, -- U.S. --, 126 S.Ct. 2405, 2409 (2006). This means "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id. "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." Id. at 2415. An objective, "reasonable employee" standard is used to determine if such deterrence would result. Id.

13

Being ostracized and provided with less guidance, being assigned additional responsibilities, and not being invited to meetings, would all dissuade a reasonable worker from making a discrimination complaint. In addition, having one's job performance come under closer scrutiny would also dissuade an employee from making a complaint. Therefore, these allegations also qualify as adverse employment actions, further satisfying the second requirement.

To establish the third requirement of the <u>prima facie</u> case, Bradford must show that a causal link existed between the adverse employment actions and the protected activity. Bradford contends that she received nothing but positive evaluations from her IMA supervisors until after she made the sexual harassment complaint on November 8, 2004. According to Bradford, the adverse employment actions began soon after she made the complaint, and culminated in her termination approximately four months later. She asserts, and IMA does not rebut, that she was first counseled regarding her job performance approximately one month after she made the complaint. The close temporal proximity of the complaint and the alleged adverse actions suggest a causal connection. Accordingly, Bradford has presented evidence sufficient to establish a <u>prima facie</u> case.

Next, the burden shifts to IMA to show a non-retaliatory reason for the adverse employment actions. IMA asserts that just before she was fired, Bradford committed a serious error that would require six weeks to correct. Bradford's supervisors claim that she should not have been making such mistakes after working at IMA for eight months, and the decision was therefore made to terminate her employment. IMA also points to problems with her work performance during the months proceeding her termination, and alleges work problems for the entire period of her employment.

Because IMA has presented non-retaliatory reasons for its decision to fire Bradford, the burden shifts back to Bradford to show that these reasons were pretexts for discrimination. The ultimate determination is whether, but for Bradford's sexual harassment complaint, the adverse employment actions would have occurred. Bradford's allegations are supported by the fact that IMA can present no evidence that Bradford was reprimanded prior to filing the sexual harassment complaint.[2]

Based on the evidence presented by Bradford, a fact-finder could reasonably

---

[2]IMA offers an e-mail in which Bradford included a password with a file, in violation of IMA's rules. However, Bradford asserts that she was not reprimanded or counseled regarding this breach, and IMA has presented no documentary evidence to rebut her assertion.

conclude that Bradford did experience retaliation because of her sexual harassment complaint. There is no documentation of any problem with Bradford's work performance prior to her complaint. To the contrary, there is documentation supporting a finding that Bradford was a good employee: Butler's letter stating that he "couldn't have asked for a better employee to work with." Record Document 11, Ex. F-3. Furthermore, the question of whether the mistake for which Bradford was fired was entirely her fault or, as she asserts, the fault of Lori, is a factual issue that has not yet been resolved. The credibility of each witness must be evaluated before a determination can be made regarding the true cause of the adverse employment actions, including Bradford's termination. Accordingly, summary judgment is improper and the defendant's motion should be **DENIED** as to Bradford's retaliation claim.

### 3. Intentional Infliction of Emotional Distress.

Bradford claims that because of the harassment and retaliation, she experienced severe emotional distress causing the inability to sleep, frequent headaches, upset stomach, and fatigue. She asserts a claim for intentional infliction of emotional distress ("IIED").

The Louisiana Supreme Court has held that "in order to recover for [IIED], a

plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991). "The conduct must be so outrageous in character, and so extreme in degree," the court continued, "as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Id.

None of the conduct alleged by Bradford was so outrageous as to go beyond all possible bounds of decency. A few comments with sexual overtones are not enough to satisfy the requirement of being "extreme in degree" or "outrageous," and certainly would not qualify as "atrocious" or "utterly intolerable." Id. Further, there is no evidence that Butler intended to cause Bradford emotional distress by making the alleged comments. When he discovered that she was upset about the comments he made regarding the picture she chose for the marketing brochure, he was concerned and contacted Lori immediately.

The acts of retaliation Bradford alleges also do not meet the extreme or

17

outrageous standard. Even if Lori and Sumpter did exclude Bradford from meetings, ostracize her, and become more critical of her work, these actions do not meet the extreme and outrageous requirement and would not be considered "utterly intolerable in a civilized community." Id. Also, while it could reasonably be argued that Lori and Sumpter intended to make the workplace uncomfortable for Bradford, the evidence does not suggest that they intended to cause her severe emotional distress. Therefore, the retaliation alleged by Bradford also does not satisfy the IIED requirements.

Bradford has failed to assert evidence from which a reasonable fact-finder could conclude that the requirements of an IIED claim have been satisfied. Therefore, IMA's motion for summary judgement is **GRANTED** as to Bradford's IIED claims.

### III. CONCLUSION

Based on the foregoing analysis, the defendant's motion for summary judgment (Record Document 11) is **GRANTED IN PART AND DENIED IN PART.**

The defendant's motion is **GRANTED** to the extent it seeks dismissal of Bradford's sexual harassment and intentional infliction of emotional distress claims. Accordingly, such claims are **DISMISSED WITH PREJUDICE.**

The defendant's motion is **DENIED** to the extent it seeks dismissal of Bradford's

retaliation claim. Accordingly, only Bradford's retaliation claim remains.

Furthermore, the plaintiff's motion to strike (Record Document 23) is **DENIED AS MOOT.**

An order consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 29th day of August, 2007.

_____
JUDGE TOM STAGG